**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EDWARD D. FAGAN D/B/A "VICTIMS OF SWISS BANK DESTRUCTION OF RECORDS" and others similarly situated,<br><br>           Plaintiff,<br><br>           v.<br><br>UNION BANK OF SWITZERLAND AG; CREDIT SUISSE AG; SWISS BANKERS ASSOCIATION; SWISS FEDERAL BANKING CONFEDERATION; and SWISS CONFEDERATION,<br><br>           Defendants. | No. 1:12-cv-01003-RBW |
| EDWARD D. FAGAN individually and as a member of the "Interest Association of Wertheim Heirs",<br><br>           Plaintiff,<br><br>           v.<br><br>CREDIT SUISSE AG; CREDIT SUISSE FIDES AG; CREDIT SUISSE TRUST AG,<br><br>           Defendants. | No. 1:12-cv-01468-RBW |

**PRE-HEARING STATEMENT
BY THE UBS AND CREDIT SUISSE DEFENDANTS**

The Court ordered plaintiff Edward D. Fagan to show cause why the complaints in these two cases should not be dismissed because "he lacks a cognizable interest in the litigation in order to proceed as a *pro se* plaintiff and cannot enter an appearance on behalf of other individuals because he has been disbarred from the practice of law." ECF No. 21 in 12-cv-1003; ECF No. 3 in 12-cv-1468. The Court has scheduled a hearing for November 2, 2012. The UBS

and Credit Suisse defendants respectfully submit this pre-hearing statement to assist the Court in its consideration of the issues in both cases.[1]

## I. MR. FAGAN IS A DISBARRED ATTORNEY WHO HAS BEEN REPEATEDLY SANCTIONED FOR MAKING FALSE REPRESENTATIONS AND IMPROPERLY TAKING A STAKE IN LITIGATION

### A. Mr. Fagan Is Disbarred in New York, New Jersey, Pennsylvania, and the District of Columbia

- On December 11, 2008, Mr. Fagan was disbarred in New York for making deliberate misrepresentations to the court, for repeatedly violating court orders, and for failing to pay a judgment sanctioning him for unethical conduct. *See In re Fagan*, 58 A.D.3d 260, 266 (N.Y. App. Div. 1st Dep't 2008). In the case out of which the disbarment proceeding arose, Mr. Fagan filed suit on behalf of a plaintiff that "did not exist" and sought relief that had "already been obtained by settlement in another action." *Id.*; *see also id.* at 261-63. In disbarring Mr. Fagan, the court also considered his "pattern of prior sanctions for unprofessional conduct" and "the absence of little if any mitigation." *Id.* at 266; *see also id.* at 263-64 (detailing Mr. Fagan's disciplinary record in New York).

- On June 23, 2009, Mr. Fagan was disbarred in New Jersey for knowing misappropriation of client funds, and conduct involving dishonesty, fraud, deceit, or misrepresentation. *See In the Matter of Edward D. Fagan*, 199 N.J. 317, 317 (2009). Among other misconduct discussed in the state Supreme Court's Disciplinary Review Board's eighty-eight page opinion recommending disbarment, Mr. Fagan knowingly misappropriated hundreds of thousands of dollars of settlement funds belonging to his client – a Holocaust survivor. *See In*

---

[1] The UBS and Credit Suisse defendants make this submission without waiver of their rights to move to dismiss the complaints, or to otherwise respond to the complaints, at the appropriate time. In 12-cv-1003,UBS AG has not been validly served with the summons and complaint; therefore, UBS AG makes this submission without waiver of service of process. In 12-cv-1468, neither Credit Suisse Fides AG nor Credit Suisse Trust AG has been validly served with the summons and complaint; therefore, both make this submission without waiver of service of process.

*the Matter of Edward D. Fagan*, No. DRB-08-143, at 84, 87 (N.J. 2009), *available at* http://njlaw.rutgers.edu/collections/ drb/decisions/08-143.pdf.

- On June 17, 2010, Mr. Fagan was disbarred in Pennsylvania under the principle of reciprocal discipline. *In re Fagan*, No. 1558 DD No. 3 (Pa. 2010), *available at* http://www.padisciplinaryboard.org/discipline_reporter_record.php?id=666.

- On October 28, 2010, Mr. Fagan was disbarred in the District of Columbia under the principle of reciprocal discipline. *In re Fagan*, 6 A.3d 865, 865 (D.C. 2010).

**B**  **Mr. Fagan Has Been Repeatedly Sanctioned For Making False Representations to Courts and Clients**

- In 2005, Mr. Fagan filed suit on behalf of a fictitious entity, which he called the "Association of Holocaust Victims for Restitution of Artwork and Masterpieces" ("AHVRAM"), seeking damages for allegedly stolen artwork. *See AHVRAM v. Bank Austria Creditanstalt AG*, No. 04-cv-3600, 2005 WL 2001888 (S.D.N.Y. Aug. 19, 2005). The court dismissed the amended complaint on the ground that it failed to assert any basis for federal court jurisdiction and that it constituted "little more than an end run" around a separate action which ended in a comprehensive settlement against defendant Bank Austria. *Id.* In an attempt to avoid the preclusive effect of this settlement, Mr. Fagan "assert[ed] that the word 'ARTWORK' d[id] not appear" in the settlement. *Id.* at *4. This representation was "totally false." *Id.* at *4-5. Further, the court held that it was "incomprehensible that Mr. Fagan would initiate the instant action" in light of the release-of-claims provision in the earlier settlement. *Id.* The court also faulted Mr. Fagan's "decepti[ve]" representation that the AHVRAM organization was "formed," when in fact Mr. Fagan appeared "to be seeking damages on behalf of a fictitious entity." *Id.* at *5. The court dismissed Mr. Fagan's suit and sanctioned him for "bad faith," ordered him to pay the defendants' costs and fees, and fined him $5,000. *Id.* at *4-6.

- The court in *AHVRAM* observed that its rulings were "bolstered by the fact that this case appears to be part of a pervasive and disturbing trend." *Id.* at *5. While declining to "enjoin Mr. Fagan from filing any actions in federal court related to *In re Austrian and German Bank Holocaust Litigation* without first seeking permission," the court stated that it would consider "revisit[ing] that issue should Mr. Fagan (or any other 'association' of which he is purportedly a member), continue to initiate harassment suits." *Id.* at *6 n.12.

- In 2007, Mr. Fagan represented foreign plaintiffs in a litigation arising from a fatal ski train fire in Austria. *See In re Ski Train Fire in Kaprun Austria on November 11, 2000*, MDL No. 1428, 2007 WL 2398697, at *1 (S.D.N.Y. Aug. 16, 2007). Mr. Fagan claimed to be in contact with "secret" whistleblower witnesses possessing knowledge relevant to the litigation. *Id.* at *1, *6. Sanctioning Mr. Fagan for misconduct, the court found:

> Fagan made false representations concerning the so-called whistleblowers and he obtained an order of confidentiality from this Court under false pretenses. Aside from being highly unprofessional, such tactics suggest utter disregard for the Court. . . . [T]his Court finds that Fagan's claims regarding his witnesses were made in bad faith. This finding is bolstered by the fact that Fagan had been previously warned and sanctioned by Judge Kram of this Court for working similar deceptions that wasted judicial resources.

*Id.* at *7. The court fined Mr. Fagan $5,000 and ordered him to pay certain of his opponent's litigation costs and expenses. *Id.*

- In 2002, Mr. Fagan was reprimanded for misrepresenting the status of a lawsuit to a client. *See In the Matter of Edward D. Fagan*, 172 N.J. 407, 407 (2002). Mr. Fagan "clearly stated [in a letter to a client] that he had filed a motion, had a court date and the matter was proceeding apace. None of that was true." *In the Matter of Edward D. Fagan*, No. DRB-01-268, at 8 (N.J. 2002), *available at* http://njlaw.rutgers.edu/collections/drb/decisions/01-268.pdf.

### C. Mr. Fagan Has Been Sanctioned For Improperly Taking a Stake in Litigation

- In *AHVRAM*, Mr. Fagan was also sanctioned for champerty. Under New York law, champerty is defined as "maintaining a suit in return for financial interest in the outcome[,]" and "attorneys are [criminally] prohibited from purchasing an interest in an action where the primary purpose is to enable the attorney to commence a suit thereon." *AHVRAM*, 2005 WL 2001888, at *5 (internal quotation marks omitted). Further, under the attorney disciplinary rules, attorneys "shall not acquire a proprietary interest in the cause of action or subject matter of litigation he or she is conducting for a client," with certain limited exceptions. *Id.* (internal quotation marks omitted). In the complaint in *AHVRAM*, Mr. Fagan admitted to possessing interest in the artwork purportedly at issue, claiming it had been "sold and/or transferred" to him by one of the plaintiffs. *Id.* Mr. Fagan also claimed to be a "member" of the non-existent organization for which he brought the suit. *Id.* at *1 n.1. The court found Mr. Fagan's actions punishable: "Accepting Mr. Fagan's allegations as true, it is clear that he acquired these 'claims' for the sole purpose of bringing this action. Moreover, by acquiring this proprietary interest in the litigation, Fagan has, at the very least, run afoul of the disciplinary rules." *Id.*

- In *In re Ski Train Fire*, Mr. Fagan was disqualified as a plaintiffs' attorney because of his personal bankruptcy. Mr. Fagan admitted that "his *single most significant* source of funding for his Chapter 11 reorganization plan [was] a hoped-for settlement" in that case. *In re Ski Train Fire*, 2007 WL 2398697, at *2. The court disqualified Mr. Fagan because "relying on this case to cover such substantial personal debts seriously undermine[d]" the court's confidence in his ability to assess the litigation and adequately represent his clients. *Id.* at *3. The court also noted that Mr. Fagan's actions in the *AHVRAM* case presented "a remarkably similar conflict of interest." *Id.* at *4.

With this history in mind – which by no means is an exhaustive description of Mr. Fagan's record of misconduct – we turn to the complaints presently before this Court.

## II. THE COMPLAINTS SHOULD BE DISMISSED BECAUSE MR. FAGAN, AS A DISBARRED ATTORNEY AND PURPORTED *PRO SE* PLAINTIFF, CANNOT REPRESENT THE INTERESTS OF OTHERS AND HE LACKS STANDING ON HIS OWN

In both actions, Mr. Fagan purports to be proceeding *pro se* but (1) is improperly representing the interests of others and (2) lacks standing to pursue these suits on his own behalf.

### A.     *Fagan v. UBS AG*, No. 12-cv-1003

This suit pertains solely to alleged bank accounts and assets allegedly belonging to the heirs of two families – the "Fleischmanns" and "Grünfelds". *See* Compl. ¶¶ 41, 70-71 (describing the alleged Fleischmann/Veber accounts), 96-98 (describing the alleged Grünfeld/Katz accounts and assets). According to the complaint, "S. Fleischmann" is the *sole* heir to the Fleischmann accounts, and "Moshe Katz" is the *sole* heir to the Grünfeld accounts. *Id.* ¶¶ 41, 76, 122. Neither of these individuals is Mr. Fagan, the purported plaintiff.

According to the complaint, Mr. Fagan "is an owner of certain interests in The Fleishmann and The Grünfeld Accounts and Safe Deposit Box assets, and has express authority from the sole surviving heirs . . . who consent to and permit Plaintiff to take certain acts regarding the accounts, including commencing this action." *Id.* Accepting this statement as true, Mr. Fagan is indisputably representing the interests of others, which, as a disbarred attorney and *pro se* litigant, he is not permitted to do.

Under the statute that permits individuals to represent themselves, Mr. Fagan is limited to "plead[ing] and conduct[ing] [his] *own cases personally* . . . ." 28 U.S.C. § 1654 (emphasis added). Consequently, as this Court has explained, "a *pro se* non-attorney generally cannot represent the interests of other individuals, and the federal courts have consistently rejected

attempts at third-party lay representation." *Heard v. U.S. Dep't of State*, No. 08-cv-2123, 2010 WL 3700184, at * (D.D.C. Sept. 17, 2010) (Walton, J.) (internal citations, quotation marks, and alterations omitted); *see also, e.g.*, *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664-65 (9th Cir. 2008) ("It is well established that the privilege to represent oneself *pro se* . . . is personal to the litigant and does not extend to other parties or entities . . . . Consequently, in an action brought by a *pro se* litigant, the real party in interest must be the person who by substantive law has the right to be enforced." (internal citations and quotation marks omitted)); *Georgiades v. Martin–Trigona*, 729 F.2d 831, 834 (D.C. Cir. 1984); *United States* ex rel. *Rockefeller v. Westinghouse Elec. Co.*, 274 F. Supp. 2d 10, 16-18 (D.D.C. 2003) (Walton, J.).

Judge Cohn of the District Court for the Southern District of Florida recently dismissed *two* similar lawsuits in which Mr. Fagan purported to represent the interests of others in artwork allegedly stolen during the Holocaust. In the first suit, Mr. Fagan filed a *pro se* complaint under the name of a fictitious organization he called "Victims of Holocaust Art Theft." *See* Final Order of Dismissal, *Victims of Holocaust Art Theft v. The Czech Republic*, No. 12-cv-80420 (S.D. Fla. July 10, 2012) (ECF No. 5). After the court put Mr. Fagan on notice that he could not represent an organization that sought to vindicate the rights of other individuals, Mr. Fagan attempted to amend the complaint to make himself the *pro se* plaintiff with a personal interest in the suit. *Id.* at 2 n.2. The court saw through Mr. Fagan's subterfuge and dismissed the complaint. *Id.* ("Fagan asserts that [the plaintiff organization] is not a legal entity apart from Fagan himself but instead is a fictitious name that Fagan is using to bring claims in his individual capacity. As the Court previously noted, however, the allegations of the Complaint indicate that other individuals besides Fagan have an interest in Plaintiff. But even if the Court were to

assume that Fagan alone owns and controls Plaintiff, it remains clear that Fagan is seeking to represent the interests of persons other than himself.")

On the same day that Judge Cohn dismissed Mr. Fagan's first lawsuit, Mr. Fagan filed a second lawsuit that was substantially identical to the first, except for minor modifications to the complaint to make it appear that Mr. Fagan was representing only his own alleged interests in the artwork. *See* Final Order of Dismissal, *Fagan v. The Czech Republic*, No. 12-cv-80743 (S.D. Fla. Oct. 23, 2010) (ECF No. 13). Again, Judge Cohn dismissed the complaint, ruling that "[d]espite Fagan's cosmetic changes to the Complaint, it remains clear that he is seeking to represent the interests of other persons in addition to his own interests. Like *Fagan I*, this action is intended to recover artwork that allegedly belongs [to others]." *Id.* at 3; *see also id.* at 2-3 n.2. Judge Cohn concluded that "this case is another improper attempt by Fagan [to represent others]," and "caution[ed] Fagan that further inappropriate filings will likewise result in dismissal, as well as any warranted sanctions." *Id.* at 5.

Mr. Fagan makes the same transparent attempt here. The purported plaintiff is Mr. Fagan and/or a fictitious entity called "Victims of Swiss Bank Destruction Records" that is allegedly registered in Florida. *See* Compl. ¶ 41 & nn.1-2, 9. However, according to the complaint itself, S. Fleischmann and Moshe Katz have interests in the claims Mr. Fagan is pursuing, as the *sole* heirs to the alleged Fleischmann and Grünfeld accounts. Accordingly, the complaint should be dismissed because Mr. Fagan is indisputably and impermissibly representing the interests of others while disbarred and purportedly proceeding *pro se*. *See also Navegar, Inc. v. United States*, 103 F.3d 994, 998 (D.C. Cir. 1997) (discussing Article III standing requirements and prudential principles, and explaining that standing may be denied where a litigant "seek[s] to assert the rights of third parties").

Mr. Fagan contends that he acquired an interest in the alleged Fleishmann and Grünfeld accounts and that such an interest somehow permits him to prosecute these claims. *See* Compl. ¶ 41 & n.2. Neither the complaint nor any of Mr. Fagan's subsequent filings describes his alleged interest in these accounts, how he allegedly obtained such an interest, or for what consideration. According to Mr. Fagan's collaborator, "Mr. Moshe Katz and Mr. 'S' Fleischmann . . . sold, transferred and assigned *a portion* of their rights to Plaintiff Edward D. Fagan." ECF 17-1 ¶ 4 (declaration of Roland Roth) (emphasis added). Even if Mr. Fagan possesses an interest in the Fleishmann or Grünfeld accounts, he still would not be able to proceed *pro se* on these claims because "it [would] remain clear that Fagan is seeking to represent the interests of persons other than himself," as Judge Cohn ruled.

What is more, any interest Mr. Fagan has acquired in the Fleischmann or Grünfeld accounts was obviously done "for the sole purpose of bringing this action." *AHVRAM*, 2005 WL 2001888, at *5 (sanctioning Mr. Fagan for champertous acts). Such behavior should not be tolerated of attorneys, and it certainly should not be tolerated of someone who has been disbarred and who has a long record of conducting himself unethically in the context of Holocaust victims' litigation. If all it takes for Mr. Fagan to pursue the claims of others is for him to purchase or otherwise obtain some vaguely-described interest in those claims, then the rule against *pro se* litigants' representation of others and the disbarment orders against Mr. Fagan will be eviscerated, and the efforts of courts to prevent Mr. Fagan from practicing law will have been for naught.

### B. *Fagan v. Credit Suisse AG*, No. 12-cv-1468

For the same reasons, Mr. Fagan may not proceed as a *pro se* plaintiff in 12-cv-1468. This suit pertains solely to alleged bank accounts and assets of the "Wertheim" family. *See*

Compl. ¶¶ 13, 33-153. Mr. Fagan does not purport to be a member of the Wertheim family or their heir. Rather, according to the complaint, Mr. Fagan "is one of several holders of rights to The Wertheim Family assets." *Id.* at n.9. Further according to the complaint, "Plaintiff Fagan is part of and cooperates with other holders of rights to The Wertheim Family assets, and refer themselves as the "Interest Association of Wertheim Heirs . . . ." *Id.* The complaint does not describe Mr. Fagan's alleged interest in these accounts and assets, how he allegedly obtained such an interest, or for what consideration. Thus, just as in 12-cv-1003, Mr. Fagan either is improperly attempting to represent the interests of others, or lacks standing to pursue this claim *pro se*, or both.

### III. THE CLAIMS ARE DUE TO BE DISMISSED ON NUMEROUS ADDITIONAL GROUNDS

Even if Mr. Fagan could somehow himself assert the Fleishmann, Grünfeld, or Wertheim claims, which he cannot, those claims are due to be dismissed on numerous grounds. Defendants provide the following non-exhaustive discussion only to provide the Court with relevant context.

#### A. The Swiss Banks Settlement

In late 1996 and early 1997, class action lawsuits were filed in federal court against certain Swiss banks, including UBS's predecessors and Credit Suisse, alleging, among other things, that Swiss financial institutions had unlawfully retained assets deposited by Holocaust victims. Mr. Fagan, then not yet disbarred, represented the plaintiffs in one of these lawsuits. The cases were consolidated before Judge Korman of the United States District Court for the Eastern District of New York.

In 1999, plaintiffs and the Swiss banks entered into a class action settlement obligating the defendants to pay $1.25 billion ("Swiss Bank Settlement"). Judge Korman approved the settlement in 2000. A copy of the Settlement Agreement is attached as Exhibit A. The

Settlement Agreement specifically recites the parties' intention "to bring about *complete closure* with respect to the concerns and allegations" against the Swiss banks. Ex. A at p. 1, col. 2, full ¶ 3 (emphasis added). In exchange for the settlement amount ("Settlement Fund"), class members agreed to settle, release, and forever discharge the Swiss banks from, among other things, any and all "Claims" relating to the Holocaust, World War II, and its prelude and aftermath. Specifically, under Section 12.1 of the Settlement Agreement:

> . . . Settling Plaintiffs irrevocably and unconditionally release, acquit, and forever discharge Releasees from *any and all Claims*. This release applies irrespective of whether any Settling Plaintiff receives a distribution from the Settlement Fund. Settling Plaintiffs *covenant not to sue* Releasees or *initiate any form of proceeding seeking redress of any kind for any Claim* covered by this Settlement Agreement in any judicial, administrative, or other proceeding anywhere in the world at any time, other than to enforce this Settlement Agreement, and consent to immediate dismissal with prejudice of any proceeding brought in violation of this provision.

Ex. A at p. 9 (Section 12.1) (emphasis added).

The Settlement Agreement defines "Claims" as:

> [A]ny and all actions, causes of action, claims, *Unknown Claims*, obligations, damages, costs, expenses, losses, rights, promises, and agreements of any nature and demands whatsoever, from the beginning of the world to now and any time in the future, arising from or in connection with actual or alleged facts occurring on or before the date of this Settlement Agreement . . . under any international, national, state, provincial, or municipal law, whether now accrued or asserted or hereafter arising or discovered, that may be, may have been, could have been, or could, be brought in any jurisdiction before any court, arbitral tribunal, or similar body against any Releasee directly or indirectly, for, upon, by reason of, or in connection with any act or omission in any way relating to the Holocaust, World War II and its prelude and aftermath, Victims or Targets of Nazi Persecution, transactions with or actions of the Nazi Regime . . . or any related cause or thing whatever, including, without limitation, all claims in the Filed Actions and all other claims relating to Deposited Assets [or] Looted Assets . . . .

Ex. A at p. 2, col. 1, ¶ 9 (Section 1) (emphasis added). As stated, Settling Plaintiffs released all "Unknown Claims," which the Settlement Agreement defines as "Claims that a claimant does

not know or suspect to exist in his/her favor as of the date of this Settlement Agreement." *Id.* at p. 4, col. 2, full ¶ 4; *see also id.* at p. 9 (Section 12.2).

The term "Settling Plaintiffs" is defined as "(1) the named plaintiffs . . . and their heirs, successors, affiliates, and assigns, and (2) all members of the Settlement Classes." *Id.* at p. 4, col. 2, full ¶ 1. Further, under Sections 10.1 and 10.2, "[a]ny Settlement Class Member who wishes to be excluded from the settlement must submit a written request for exclusion[,]" and "[a]ny Settlement Class Member who does not submit an exclusion request meeting the requirement set forth in Section 10.1 by the date specified in the Class Notice will be a Settlement Class Member for all purposes under this Settlement Agreement." *Id.* at p. 9 (Sections 10.1-10.2). "Releasees" is defined as "Settling Defendants" which in turn "means Credit Suisse and UBS AG . . . and each of their former and current corporate parents, subsidiaries, and branches . . . ." *Id.* at p. 3, col. 2, full ¶ 7; p. 4, col. 1, full ¶ 6.

A Special Master was appointed to devise a plan for the allocation and distribution of the Settlement Fund, and his 900-page distribution plan was approved by Judge Korman and the Second Circuit. *In re Holocaust Victim Assets Lit.*, Nos. 00-9595, 00-9597, 2001 WL 868507 (2d Cir. July 26, 2001), *reissued as a published opinion*, 413 F.3d 183 (2d Cir. 2005). Pursuant to this plan, a Claims Resolution Tribunal ("CRT") was established to consider claims by alleged depositors, under the aegis of the court. The District Court in the Eastern District of New York retains jurisdiction to this day to administer and enforce the Settlement Agreement.

### B. *Fagan v. UBS AG*, No. 12-cv-1003: The Fleischmann and Grünfeld Claims Are Barred And Have Already Been Rejected On The Merits

The Fleishmann and Grünfeld claims here are barred by the Swiss Banks Settlement, and were rejected on the merits by the CRT and Judge Korman. Mr. Fagan's collateral attacks on the Swiss Banks Settlement in this Court are due to be dismissed for this additional reason.

### 1. Fleischmann Claims

As the complaint in 12-cv-1003 acknowledges, the Fleischmanns and their heirs were members of the Settlement Class and did not opt out of the Swiss Bank Settlement. *See* Compl. ¶ 79. Therefore, they are bound by its terms. As the complaint also acknowledges, the Fleischmanns filed claims with the CRT, submitting what they deemed evidence of the existence of bank accounts. *See id.* ¶ 82. However, the CRT – notwithstanding that it applied exceedingly lenient standards of proof – concluded that the submitted material did not constitute sufficient evidence to form the basis for an award. *See* ECF 16-4 (Ex. 4 to Defendants' Reply in Support of Motion to Vacate Default Entries) (decision of the CRT denying Fleischmann/Veber claims).

The Fleischmanns then appealed successively to the Special Master and to Judge Korman, both of whom affirmed the decision of the CRT on the merits. *See* ECF 16-5 (Ex. 5 to Defendants' Reply in Support of Motion to Vacate Default Entries) (letter from CRT Special Master explaining the denial of the Fleischmann/Veber claims, and Judge Korman's order affirming CRT denial of claims).

### 2. Grünfeld Claims

The Grünfelds and their heirs were members of the Settlement Class and did not opt out of the Swiss Banks Settlement. *See* Compl. ¶ 123. They filed claims with the CRT, which the CRT denied. *See id.* ¶ 126; ECF 16-3 (Ex. 3 to Defendants' Reply in Support of Motion to Vacate Default Entries) (decision of the CRT denying the Grünfeld/Katz claims). On appeal from the denial of their claims at the CRT, Professor Burt Neuborne, whom Judge Korman had appointed to act as lead plaintiffs' settlement counsel, urged affirmance the CRT's decision, noting numerous questions as to the credibility of the claimants. *See* ECF 16-6 (Ex. 6 to Defendants' Reply in Support of Motion to Vacate Default Entries) (brief of Professor

Neuborne).  Judge Korman affirmed the CRT's decision.  *See* ECF 16-7 (Judge Korman's order affirming CRT denial of the Grünfeld/Katz claims).

### C. *Fagan v. Credit Suisse AG*, No. 12-cv-1468

The precise nature and contours of the Wertheim-family claims in 12-cv-1468 are not clear from the Complaint, and we are unable to determine with certainty whether they are barred by the Swiss Banks Settlement.  They are due to be dismissed for a variety of other reasons.

### IV. CONTRARY TO MR. FAGAN'S ASSERTION, PROFESSOR NEUBORNE'S POSITION IS THAT "CLAIMS SOUNDING IN DOCUMENT DESTRUCTION" ARE BARRED BY THE SWISS BANKS SETTLEMENT

Finally, defendants note that Mr. Fagan's frequent incantation of a comment by Professor Neuborne in 2011 about claims against the Swiss banks sounding in destruction of records is unavailing.  *See, e.g.*, Compl. ¶ 28 in 12-cv-1003.  On April 18, 2012, Professor Neuborne wrote to counsel for UBS AG, copying Judge Korman, as follows:

> I've received your inquiry concerning my view of the potential viability of a spoliation claim on behalf of members of the Swiss bank class.  As the footnote in the Katz memo notes, such a claim "might" exist for a person who is unable to pursue a CRT claim because the records no longer exist.  If the Swiss bank settlement had never taken place, such a claim would be a serious one.  Since, however, the public was aware of the destruction of bank records as reported by the Volcker study before final approval of the settlement, my opinion is that such a spoliation claim is *probably precluded by the settlement*.  I, of course, have no official standing. Thus, the final decision on the validity of such a claim would be up to the court. That is why I phrased my statement in the footnote in the conditional tense.  *My personal opinion is that preclusion should apply.  For that reason, I have declined to pursue such a claim as lead settlement counsel.*  I have also shared that opinion with lawyers who have asked my opinion about the merits of such a claim.  I hope that clarifies my position.

Ex. B (emphasis added).

### V. CONCLUSION

For these reasons, the UBS and Credit Suisse defendants respectfully request that the Court dismiss the complaints.

- 15 -

Dated: October 26, 2012        Respectfully Submitted,

                     /s/ Roger M. Witten
                    Roger M. Witten
                    D.C. Bar No. 163261
                    Wilmer Cutler Pickering Hale and Dorr LLP
                    7 World Trade Center
                    New York, New York 10007
                    roger.witten@wilmerhale.com
                    (212) 230-8850 (t)
                    (212) 230-8888 (f)

                    David W. Bowker
                    D.C. Bar No. 989309
                    Wilmer Cutler Pickering Hale and Dorr LLP
                    1875 Pennsylvania Avenue, NW,
                    Washington, DC 20006
                    david.bowker@wilmerhale.com
                    (202) 663-6558 (t)
                    (202) 663-6363 (f)

                    *Attorneys for UBS AG and Credit Suisse AG*
                    *in 12-cv-1003*

                    *Attorneys for Credit Suisse AG, Credit*
                    *Suisse Fides AG, and Credit Suisse Trust*
                    *AG in 12-cv-1468*

## CERTIFICATE OF SERVICE

    I hereby certify that on October 26, 2012, I caused the foregoing **PRE-HEARING STATEMENT BY THE UBS AND CREDIT SUISSE DEFENDANTS** to be served by first-class mail, postage prepaid on the following:

Edward D. Fagan
P.O. Box 812512
Boca Raton, FL 33481


          /s/ Roger M. Witten

          Roger M. Witten