**Exhibit A**

*Edward D. Fagan d/b/a "Victims of Swiss Bank Destruction of Records"  v. UBS AG,*
No. 1:12-cv-01003-RBW

*Edward D. Fagan v. Credit Suisse AG,*
No. 1:12-cv-01468-RBW

# Class Action Settlement Agreement

This Settlement Agreement ("Settlement Agreement") is made and entered into as of this 26th day of January 1999, by and between Settling Defendants and Settling Plaintiffs.

WHEREAS concerns have been raised about actions and omissions of Settling Defendants and other Releasees before, during, and after the Nazi Regime's rule in Germany relating principally to financial transactions with or affecting Victims or Targets of Nazi Persecution as defined herein;

WHEREAS Plaintiffs commenced the Filed Actions, and specifically alleged, *inter alia*, that Settling Defendants (1) collaborated with the Nazi Regime and participated in a scheme to (a) unlawfully retain class members' accounts deposited prior to and during the Second World War; (b) obtain for deposit, transfer, or exchange, assets looted by the Nazi Regime and its agents; and (c) profit from the use of slave labor, the fruits of which were deposited with Settling Defendants; and (2) concealed the true nature and scope of their conduct during and following the Holocaust all allegations that Settling Defendants dispute;

WHEREAS Settling Defendants believe that they could assert, have asserted, and would prevail in court on, defenses to the claims asserted against them; and Settling Plaintiffs believe to the contrary;

WHEREAS Settling Defendants and other Releasees, in recognition of the legal, moral and material aspects of the concerns referred to above, have initiated and pursued certain ameliorative measures outside the context of any litigation, such as establishing and supporting: (1) the Special Fund for Needy Victims of the Holocaust/Shoah ("Humanitarian Fund"), initiated by Settling Defendants in February 1997 with a voluntary contribution of approximately $70 million to provide humanitarian aid to needy Holocaust survivors; (2) the Independent Committee of Eminent Persons ("ICEP"), chaired by Paul A. Volcker, which was established in 1996 by the Swiss Bankers Association, the World Jewish Congress, and other Jewish organizations to conduct an independent audit of Swiss banks to identify accounts from the World War II era that could possibly belong to victims of Nazi persecution; (3) the Independent Claims Resolution Foundation ("ICRF"), also chaired by Paul A. Volcker, which was

established to oversee an objective, impartial, streamlined process for resolving claims to dormant accounts listed in notifications published worldwide by the Swiss Bankers Association; and (4) the Independent Commission of Experts, an independent group of internationally recognized historians chaired by Professor Jean François Bergier, which the Swiss Confederation established in 1996 to examine Switzerland's relationship with Nazi Germany;

WHEREAS Settling Plaintiffs and Settling Defendants commit to support and urge the conclusion of the mandates of the Volcker Committee and the Bergier Commission;

WHEREAS Settling Defendants and Settling Plaintiffs wish to bring about prompt and complete closure with respect to the concerns and allegations referred to in the paragraphs above;

WHEREAS Settling Defendants and Settling Plaintiffs believe and affirm that this Settlement Agreement, in conjunction with the steps initiated by Settling Defendants and other Releasees described above, does and should bring about complete closure with respect to the concerns and allegations described in the paragraphs above, and thereby brings to an end all confrontation between Settling Plaintiffs and Organizational Endorsers on the one hand and Releasees on the other hand;

WHEREAS counsel for Settling Plaintiffs have conducted as thorough an investigation as possible relating to the claims and the underlying events and transactions alleged in Settling Plaintiffs' complaints, having (1) analyzed available information adduced through informal discovery, (2) reviewed relevant public information at the U.S. Archives and other sources, (3) researched the applicable law with respect to the claims of Settling Plaintiffs and defenses of Settling Defendants and other Releasees, and (4) consulted with experts;

WHEREAS Settling Plaintiffs, by their counsel, have conducted arms-length negotiations with Settling Defendants with respect to a compromise and settlement of the Filed Actions and other Claims against Releasees with a view to settling and finally resolving the Settled Claims, and to achieving the best possible relief consistent with the interests of the Settlement Classes;

WHEREAS solely for purposes of the settlement set forth in this Settlement Agreement, Settling Defendants have consented to conditional certification of Settlement Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P. 23");

WHEREAS based on the investigation, discovery, review of public information, and research described above, Settling Plaintiffs have concluded that the terms and conditions of this Settlement Agreement are fair, reasonable, and adequate to Settling Plaintiffs and in their best interests;

WHEREAS Settling Plaintiffs, through their counsel, have agreed to settle the claims raised in the Filed Actions and to resolve any additional Claims that they have or could bring against any Releasee, after considering (1) the substantial benefits that Settling Plaintiffs will receive from the settlement, (2) the attendant risks of litigation, and (3) the desirability of an immediate resolution;

WHEREAS this Settlement Agreement is fully supported by the Organizational Endorsers that have endorsed it; and

WHEREAS nothing in this Settlement Agreement shall be construed as or deemed to be an admission of any kind by any party or Releasee.

NOW THEREFORE, it is agreed by and among the parties to this Settlement Agreement, through their respective attorneys, subject to approval of the Court pursuant to Fed. R. Civ. P. 23, in consideration of the covenants herein and the benefits flowing to the parties, the Settlement Classes, and the Releasees under this Settlement Agreement, that all Claims against the Releasees shall be settled and released, and that the Filed Actions shall be dismissed with prejudice, upon and subject to the following terms and conditions, and in exchange for the substantial benefits that this Settlement Agreement confers upon the Settlement Classes.

# 1. DEFINITIONS

As used in this Settlement Agreement and in addition to any definitions elsewhere in this Settlement Agreement, the following terms shall have the meanings set forth below:

Assets means any and all objects of value including but not limited to personal, commercial, real, tangible, and intangible property, including, without limitation, cash, securities, gems, gold and other precious metals, jewelry, documents, artworks, equipment, and intellectual property.

Claims or Settled Claims means any and all actions, causes of action, claims, Unknown Claims, obligations, damages, costs, expenses, losses, rights, promises, and agreements of any nature and demands whatsoever, from the beginning of the world to now and any time in the future, arising from or in connection with actual or alleged facts occurring on or before the date of this Settlement Agreement, whether in law, admiralty, or equity, whether class or individual, under any international, national, state, provincial, or municipal law, whether now accrued or asserted or hereafter arising or discovered, that may be, may have been, could have been, or

could, be brought in any jurisdiction before any court, arbitral tribunal, or similar body against any Releasee directly or indirectly, for, upon, by reason of, or in connection with any act or omission in any way relating to the Holocaust, World War II and its prelude and aftermath, Victims or Targets of Nazi Persecution, transactions with or actions of the Nazi Regime, treatment of refugees fleeing Nazi persecution by the Swiss Confederation or other Releasees, or any related cause or thing whatever, including, without limitation, all claims in the Filed Actions and all other claims relating to Deposited Assets, Looted Assets, Cloaked Assets, and/or Slave Labor, or any prior or future effort to recover on such claims directly or indirectly from any Releasee.

Claims Resolution Tribunal means the group of arbitrators acting under the auspices of the ICRF.

Class Notice has the meaning set forth in Section 9.2 hereof

Cloaked Assets means Assets wholly or partly owned, controlled by, obtained from, or held for the benefit of, any company incorporated, headquartered, or based in Germany or any other Axis country or other country occupied by an Axis country between 1933 and 1946 or any other entity or individual associated with the Nazi Regime (regardless of where such entity or individual was or is located, incorporated, headquartered, or conducting business), the identity, value, or ownership of which was in fact or allegedly disguised by, through, or as the result of any intentional or unintentional act or omission of or otherwise involving any Releasee, including, without limitation, Internationale Industrie und Handelsbeteiligungen A.G. (a.k.a. "Interhandel"), and its predecessors, successors, or affiliates.

Court means the United States District Court for the Eastern District of New York.

Deposited Assets means (1) any and all Assets actually or allegedly deposited by the beneficial owner, fiduciary, or other individual or organization with any custodian, including, without limitation, a bank, branch or agency of a bank, other banking organization or custodial institution or investment fund established or operated by a bank incorporated, headquartered, or based in Switzerland at any time (including, without limitation, the affiliates, subsidiaries, branches, agencies, or offices of such banks, branches, agencies, custodial institutions, and investment funds that are or were located either inside or outside Switzerland at any time) in any kind of account (including, without limitation, a safe deposit box or securities account) prior to May 9, 1945, that belonged to a Victim or Target of Nazi Persecution, including, without limitation, any Assets that Settling Defendants or Other Swiss Banks determine should be paid to a particular claimant because the Assets definitely or possibly belonged to a Victim or Target of Nazi Persecution; and/or (2) any and all Assets that the ICEP or the Claims Resolution Tribunal determines should be paid to a particular claimant or to the Settlement Fund because the Asset definitely or possibly belonged to an

individual, corporation, partnership, sole proprietorship, unincorporated association, community, congregation, group, organization, or other entity (including, without limitation, their respective heirs, successors, affiliates, and assigns) actually persecuted by the Nazi Regime or targeted for persecution by the Nazi Regime for any reason. A determination by the ICEP or the Claims Resolution Tribunal to award a special adjustment for interest or fees to a particular claimant pursuant to the guidelines of the Panel of Experts on Interest and Fees and Other Charges shall be deemed to establish that the claimant was persecuted or targeted for persecution within the meaning of subsection (2) of this definition.

Escrow Agreement means the agreement dated November 19, 1998, attached hereto as Exhibit A.

Escrow Fund means the fund referenced in Section 5.1 herein and established pursuant to the Escrow Agreement.

Fairness Hearing means the hearing conducted by the Court in connection with the determination of fairness, adequacy, and reasonableness of this Settlement Agreement under Fed. R. Civ. P. 23.

Filed Actions means Weisshaus, et al, v. Union Bank of Switzerland, et al., CV-96-4849, Friedman, et al. v. Union Bank of Switzerland, et al., CV-96-5161, Trilling-Grotch, et al., v. Union Bank of Switzerland, et al., CV-96-5161, Sonabend, et al. v. Union Bank of Switzerland, et al., CV-96-5161, and World Council of Orthodox Jewish Communities v. Union Bank of Switzerland, et al., CV-97-0461, which are being considered together for pretrial purposes under the caption In re Holocaust Victim Assets, Master Docket CV-96-4849, pending in the United States District Court for the Eastern District of New York; Markovicova et al. v. Swiss Bank Corporation, et al., CV-98-2934, pending in the United States District Court for the Northern District of California; and Rosenberg v. Swiss National Bank, No. CV-98-1647, pending in the United States District Court for the District of Columbia.

Final Order and Judgment means the order to be entered by the Court, in a form to be mutually agreed upon by the parties, approving this Settlement Agreement without material alterations, as fair, adequate, and reasonable under Fed. R. Civ. P. 23, confirming the certification of the Settlement Classes under Fed. R. Civ. P. 23, and making such other findings and determinations as the Court deems necessary and appropriate to effectuate the terms of this Settlement Agreement. For purposes of this Settlement Agreement, such order shall not become the Final Order and Judgment unless and until the Settlement Date occurs.

Humanitarian Fund means the Fund for Needy Victims of the Holocaust/Shoah referenced in the Decree of the Swiss Federal Council dated February 26, 1997, and described in the fifth paragraph of this Settlement Agreement.

ICEP means the Independent Committee of Eminent Persons described in the fifth paragraph of this Settlement Agreement.

ICRF means the Independent Claims Resolution Foun-

dation described in the fifth paragraph of this Settlement Agreement.

Looted Assets means Assets actually or allegedly belonging in whole or in part to Victims or Targets of Nazi Persecution that were actually or allegedly stolen, expropriated, Aryanized, confiscated, or that were otherwise wrongfully taken by, at the request of, or under the auspices of, the Nazi Regime.

Matched Assets means Deposited Assets that the ICEP or the Claims Resolution Tribunal determines belong, and should be paid to, particular claimants.

Nazi Regime means the National Socialist government of Germany from 1933 through 1945 and its instrumentalities, agents, and allies (including, without limitation, all other Axis countries), all occupied countries, and all other individuals or entities in any way affiliated or associated with, or acting for or on behalf or under the control or influence of, the Nazi Regime, including, without limitation, the Accused Organizations and Individuals in the Nurnberg Trial, 6 F.R.D. 69 (1946).

Organizational Endorsers means the organizations signing written endorsements of this Settlement Agreement.

Other Swiss Banks means banks listed on Exhibit B hereto.

Preliminary Approval means the Court's issuance of an order conditionally certifying the Settlement Classes, preliminarily approving this Settlement Agreement, and approving the plan for Class Notice to the Settlement Classes.

Releasees means the Settling Defendants; the Swiss National Bank; Other Swiss Banks; the Swiss Bankers Association; the Swiss Confederation (including, without limitation, the Cantons and all other political subdivisions and governmental instrumentalities in Switzerland); all business concerns (whether organized as corporations or otherwise) headquartered, organized, or incorporated in Switzerland as of October 3, 1996, including, without limitation, corporations incorporated in Switzerland that are owned, operated, or controlled directly or indirectly by corporations located outside Switzerland ("the Swiss-based Concerns") and their branches and offices, wherever located; and all affiliates of any Swiss-based Concern (whether organized as corporations, partnerships, sole proprietorships or otherwise) wherever headquartered, organized, or incorporated in which the Swiss-based Concern owns or controls directly or indirectly at least 25 percent of any class of voting securities or controls in any manner the election or appointment of a majority of the board of directors, trustees or similar body ("Owned or Controlled Affiliates"). As to each of the foregoing Releasees, the term Releasees also includes, without limitation, each of its predecessors, successors, assigns, officers, directors, employees, agents, attorneys, heirs, executors, administrators, and personal representatives wherever located. The term Releasees excludes Basler Lebens-Versicherungs-Gesellschaft, Zürich Lebensversicherungs-Gesellschaft, and Winterthur Lebensversicherungs Gesellschaft and their

subsidiaries in the insurance business, but only to the extent of insurance claims of the type asserted in **Cornell, et al. v. Assicurazioni Generali S.p.A., et al.**, 97 Civ. 2262 (S.D.N.Y.). The term Releasees also excludes parent companies and other affiliates of Swiss-based Concerns that (1) before 1945 were headquartered, based, or incorporated in Germany or any other Axis country or other country occupied by an Axis country between 1933 and 1946, (2) were not Owned or Controlled Affiliates as defined herein, and (3) disguised the identity, value, or ownership of Cloaked Assets or used Slave Labor. A company shall not be deemed a Releasee by virtue of being an Owned or Controlled Affiliate if (1) the company was headquartered, based, or incorporated in Germany or any other Axis country or other country occupied by an Axis country between 1933 and 1946, and (2) the company's parent was a Swiss-based Concern established for the sole purpose of disguising the identity, value, or ownership of Cloaked Assets.

**Settlement Agreement** means this agreement.

**Settlement Amount** has the meaning set forth in Section 5.1 hereof.

**Settlement Class or Settlement Classes** means the plaintiff classes described in Section 8.2 hereof for which Settling Plaintiffs and Settling Defendants shall seek certification pursuant to Fed. R. Civ. P. 23, except those persons who, in accordance with the terms of this Settlement Agreement and the Court's order certifying the Settlement Classes, submit a timely request for exclusion from the classes. For the sole purpose of permitting the WJRO to act as a representative of the Settlement Class or Settlement Classes, the WJRO is hereby included as a member of the Settlement Class or Settlement Classes as defined above and as used in this Settlement Agreement.

**Settlement Date** means the date on which all of the following have occurred: (1) the entry of the Final Order and Judgment without material modification; (2) the achievement of finality for the Final Order and Judgment by virtue of that Order having become final and non-appealable through (a) the expiration of all appropriate appeal periods without an appeal having been filed (not including any provision for challenging the Final Order and Judgment pursuant to Rule 60 of the Federal Rules of Civil Procedure), (b) final affirmance of the Final Order and Judgment on appeal or final dismissal or denial of all such appeals, including petitions for review, rehearing, or certiorari; or (c) final disposition of any proceedings, including any appeals, resulting from any appeal from the entry of the Final Order and Judgment, and (3) the expiration of any right of withdrawal or termination under Section 15 of this Settlement Agreement.

**Settlement Fund** means the fund established pursuant to Section 5.1 of this Settlement Agreement.

**Settling Defendants** means Credit Suisse and UBS AG (as successor to Union Bank of Switzerland and Swiss Bank Corporation) and each of their former and current corporate parents, subsidiaries, affiliates, and branches (including, without limitation, Credit Suisse Group, Credit Suisse, Credit Suisse First Boston, Credit Suisse First Boston Corporation, Credit Suisse Financial Products, Credit Suisse First Boston (Europe) Ltd., Credit Suisse First Boston Canada, Inc., and CSFB Aktiengesellschaft), predecessors, successors, assigns, officers, directors, employees, agents, attorneys, heirs, executors, administrators, and personal representatives, wherever they were, are, or may be located, incorporated, or conducting business, except for Winterthur Lebensversicherungs Gesellschaft and its subsidiaries in the insurance business, but only to the extent of insurance claims of the type asserted in **Cornell, et al. v. Assicurazioni Generali S.p.A., et al.**, 97 Civ. 2262 (S.D.N.Y.).

**Settling Plaintiffs** means (1) the named plaintiffs in the Filed Actions, and their heirs, successors, affiliates, and assigns, and (2) all members of the Settlement Classes, except those who, in accordance with the terms of this Settlement Agreement and the Court's order certifying the Settlement Classes, submit a timely request for exclusion from the classes.

**Slave Labor** means work for little or no remuneration actually or allegedly performed by individuals involuntarily at the insistence, direction, or under the auspices of the Nazi Regime.

**Supplemental Agreement** means the agreement to be filed under seal with the Court permitting Settling Defendants to terminate this Settlement Agreement based on the number of exclusion requests filed in accordance with Section 10.1 herein.

**Unknown Claims** means Claims that a claimant does not know or suspect to exist in his/her favor as of the date of this Settlement Agreement.

**Unmatched Assets** means Deposited Assets identified by ICEP that are not awarded or paid to particular claimants, other than Matched Assets.

**Victim or Target of Nazi Persecution** means any individual, corporation, partnership, sole proprietorship, unincorporated association, community, congregation, group, organization, or other entity persecuted or targeted for persecution by the Nazi Regime because they were or were believed to be Jewish, Romani, Jehovah's Witness, homosexual, or physically or mentally disabled or handicapped.

**WJRO** means the World Jewish Restitution Organization and all of its constituent bodies. For purposes of this Settlement Agreement, the WJRO shall intervene as a party to this litigation and shall be, along with others, a representative of the Settlement Classes.

## 2. SETTLEMENT PURPOSES ONLY

2.1. This Settlement Agreement is for settlement purposes only, and, notwithstanding anything else in this Settlement Agreement, neither the fact of, nor any provision contained in, this Settlement Agreement nor any action taken hereunder shall constitute, be construed as, or be offered or received in evidence as an admission of any Claim or any

fact by any party or any Releasee.

2.2. Any certification of a Settlement Class pursuant to the terms of this Settlement Agreement shall not constitute and shall not be construed as an admission on the part of any Releasee that this action, or any other proposed or certified class action, is appropriate for trial class treatment pursuant to Fed. R. Civ. P. 23 or any similar class action statute or rule. This Settlement Agreement is without prejudice to the rights of any Releasee (1) to oppose any request for certification in the Filed Actions should the Settlement Agreement not be approved or implemented for any reason, or (2) to oppose any request for certification or certification in any other proposed or certified class action.

2.3. If this Settlement Agreement is not approved, is terminated, or fails to be implemented for any reason, any certification, either preliminary or final, of the Settlement Classes or any other alleged class shall be deemed null and void *ab initio.*

## 3. SUBMISSION FOR PRELIMINARY APPROVAL

Promptly after execution of this Settlement Agreement, Settling Defendants and Settling Plaintiffs shall submit this Settlement Agreement, through their respective attorneys, to the Court for Preliminary Approval.

## 4. ICEP INVESTIGATION AND CLAIMS RESOLUTION

4.1. Although the parties anticipate that the ICEP and the Claims Resolution Tribunal will continue, at certain Releasees' expense, in a manner that is appropriate in light of this Settlement Agreement, Releasees shall have no additional financial exposure or additional liability of any kind whatsoever beyond the Settlement Amount on account of the activities or findings of the ICEP, the ICRF, or the Claims Resolution Tribunal, or on account of any cessation of or change in the activities of the ICEP, the ICRF, or the Claims Resolution Tribunal, excluding costs associated with the functioning of those entities.

4.2. Settling Defendants shall pay Matched Assets, together with interest and fees as determined pursuant to guidelines established by the ICRF, to rightful claimants as and when determined by the ICEP or the Claims Resolution Tribunal. Such payments of Matched Assets shall be deemed to be included in, and part of, the Settlement Amount and shall in no event cause the Settlement Amount to be increased. As provided in Section 5.3, Matched Assets paid to claimants after Settling Defendants have paid the final installment of the Settlement Amount shall be refunded to Settling Defendants from the Settlement Fund if and to the extent the balance remaining in the Settlement Fund is sufficient to pay the refund.

4.3. Persons receiving payments as determined by the

ICEP or the Claims Resolution Tribunal shall not be precluded on account of those payments from receiving a distribution from the Settlement Fund.

## 5. SETTLEMENT PAYMENTS

5.1. Settling Defendants together shall pay to the funds identified in this Section 5.1 a total of $1.25 billion ("Settlement Amount"), including the payments referred to in Section 4.2 hereof, which are deemed credits as provided for in Sections 5.2 and 5.3 hereof. The Settlement Amount constitutes the maximum principal amount that Settling Defendants shall have to pay for any reason with respect to Claims. Payment of the Settlement Amount shall fully satisfy and discharge Settling Defendants' and Other Swiss Banks' obligations with respect to Unmatched Assets. Except as provided in Sections 5.2 and 5.3, Settling Defendants shall pay the Settlement Amount in four installments: (1) $250 million ("Installment I") on November 23, 1998; (2) $333 million ("Installment 2") on November 23, 1999; (3) $333 million ("Installment 3") on November 23, 2000; and (4) $334 million ("Installment 4") on November 23, 2001.

Settling Defendants have paid Installment 1 into an escrow account established in accordance with the Escrow Agreement attached hereto as Exhibit A ("Escrow Fund"). Settling Defendants shall pay Installments 2, 3, and 4 to a separate fund ("Settlement Fund") that Settling Plaintiffs shall establish following the Court's issuance of Preliminary Approval. Within thirty (30) days after the Settlement Date, the Escrow Agents shall authorize the transfer of the then existing balance of the Escrow Fund (including interest earned thereon), less a reserve for taxes payable by the Escrow Fund, to the Settlement Fund.

Settling Defendants will accelerate payment of a portion of Installments 2, 3, or 4 to benefit needy members of the Settlement Class in the event that Settling Plaintiffs make a written request to Settling Defendants showing that (1) the Humanitarian Fund has been exhausted, (2) preceding installments of the Settlement Amount have been fully disbursed in accordance with a Court-approved distribution plan, and (3) there is an immediate and specific need to provide relief to identified Settlement Class members prior to the next scheduled installment. Any dispute as to whether Settling Defendants must make an accelerated payment, or any dispute as to the amount of any such accelerated payment, will be submitted to the Court for resolution.

5.2. All amounts (including, without limitation, interest and fees) that Settling Defendants and Other Swiss Banks have paid since October 3, 1996, or may pay in the future to Deposited Asset claimants as a result of determinations made by the ICEP or the Claims Resolution Tribunal shall reduce the Settlement Amount and may be credited in full against the installment next due (e.g., payments made before November 23, 1999, may be credited against Installment 2) or against any subsequent installment. Any payments made to such

claimants on account of claims relating to Looted Assets shall be credited in an amount commensurate with the amount such claimants would have received from the Settlement Fund as members of the Looted Assets Class. Within thirty (30) days after the Court grants Preliminary Approval, Settling Defendants shall submit to the Court a schedule of payments made as of that date that are to be credited against the Settlement Amount pursuant to this Section 5.2. Settling Defendants shall thereafter provide the Court a schedule showing subsequent payments on a quarterly basis until Settling Defendants have paid the final installment of the Settlement Amount.

Payments to claimants on account of determinations by the ICEP or the Claims Resolution Tribunal made after Settling Defendants have paid the final installment of the Settlement Amount shall be refunded to Settling Defendants from the Settlement Fund if and to the extent the balance remaining in the Settlement Fund is sufficient to pay the refund. Beginning thirty (30) days after Settling Defendants pay the final installment of the Settlement Amount, Settling Defendants shall provide the Court a schedule every thirty (30) days reflecting such payments. The Settlement Fund shall pay the scheduled amount to Settling Defendants within fifteen (15) business days after the schedule is submitted.

5.3.   All amounts that Settling Defendants and Other Swiss Banks have paid since October 3, 1996, or may pay in the future to individuals or entities (including, without limitation, individuals or entities falling within the class definitions for the Settlement Classes) to discharge Claims (including, without limitation, claims for contribution or common law indemnity) brought against Settling Defendants or Other Swiss Banks directly by claimants or through private or governmental organizations such as, without limitation, the New York Holocaust Claims Processing Office shall reduce the Settlement Amount and may be credited against the installment next due (e.g., payments made before November 23, 1999, may be credited against Installment 2) or against any subsequent installment. Payments made to claimants on account of claims relating to Looted Assets shall be credited in an amount commensurate with the amount such claimants would have received from the Settlement Fund as members of the Looted Assets Class. Within thirty (30) days after the Court grants Preliminary Approval, Settling Defendants shall submit to Settling Plaintiffs a schedule of payments made as of that date that are to be credited against the Settlement Amount pursuant to this Section 5.3. Within fifteen (15) business days thereafter, Settling Plaintiffs shall notify Settling Defendants of any objections to the scheduled amounts. If objections are raised, the parties shall promptly meet and confer to resolve them. If there are remaining disagreements, the parties shall notify the Court at least fifteen (15) business days before Settling Defendants are due to pay the next installment of the Settlement Amount. The Court shall decide, before the next installment of the Settlement Amount is due, which payments or portions thereof may be credited against any installment.

For subsequent payments to be credited against the Settlement Amount pursuant to this Section 5.3, Settling Defendants shall submit a quarterly schedule of such payments to Settling Plaintiffs. Within fifteen (15) business days after receiving a schedule, Settling Plaintiffs shall notify Settling Defendants of any objections to the schedule. If objections are raised, the parties shall promptly meet and confer to resolve them. If there are remaining disagreements, the parties shall notify the Court at least fifteen (15) business days before Settling Defendants are due to pay the next installment of the Settlement Amount. The Court shall decide, before the next installment of the Settlement Amount is due, which payments or portions thereof may be credited against the installment.

If Settling Defendants or Other Swiss Banks make payments that Settling Defendants are entitled to credit against the Settlement Amount under this Section 5.3 after Settling Defendants have paid the last installment of the Settlement Amount, Settling Defendants shall be entitled to a refund from the Settlement Fund for such payments if and to the extent the balance remaining in the Settlement Fund is sufficient to pay the refund. Beginning thirty (30) days after Settling Defendants pay the final installment of the Settlement Amount, Settling Defendants shall provide Settling Plaintiffs a schedule showing such payments every thirty (30) days. Settling Plaintiffs must notify Settling Defendants of any objection to the schedule within fifteen (15) business days of receiving the schedule. If Settling Plaintiffs raise no objection, the Settlement Fund shall pay the scheduled amount to Settling Defendants within fifteen (15) business days of receiving the schedule. If Settling Plaintiffs object to refunding all or part of the scheduled amount, the Court shall decide whether a refund is to be given and the amount of the refund.

To protect the privacy of claimants, schedules submitted to Settling Plaintiffs or the Court pursuant to Section 5.2 or Section 5.3 may, in lieu of listing the names of those receiving payments, describe the nature of the Claims for which payments were made and include a certification by Settling Defendants that the descriptions are accurate. Settling Defendants shall request that the ICEP and the Claims Resolution Tribunal cooperate with Settling Plaintiffs in providing information necessary to determine whether a particular claimant seeking compensation from the Settlement Fund has received compensation from Settling Defendants or Other Swiss Banks on account of a determination by the ICEP or the Claims Resolution Tribunal. Failure by the ICEP or the Claims Resolution Tribunal to provide the requested information shall in no way affect the credits and refunds to which Settling Defendants are entitled pursuant to Section 5.2 and Section 5.3.

5.4.   Settling Defendants' obligation to pay the Settlement Amount may be terminated or reduced if (1) Settling Plaintiffs commit a material breach of this Settlement Agreement including without limitation, a breach of any of the provisions, of Section 11, or (2) any Organizational Endorser

commits a material breach of its written endorsement of this Settlement Agreement. For purposes of this Section 5.4, the act or omission of any officer, director, leader, or spokesperson of or for an Organizational Endorser shall be deemed the act or omission of the Organizational Endorser. If Settling Defendants determine that one or more Settling Plaintiffs or Organizational Endorsers have committed a material breach, Settling Defendants shall so notify the Court and Settling Plaintiffs within thirty (30) business days of detecting the breach. The Court shall determine whether the claimed breach has occurred and, if so, whether it constitutes a material breach warranting the termination of Settling Defendants' obligations to make further payment of the Settlement Amount. In lieu of ordering termination, the Court may order an equitable reduction in the Settlement Amount to compensate for losses suffered by Settling Defendants and other Releasees on account of the breach and to deter future breaches.

5.5.   Commencing on January 23, 2001, interest at a rate of 3.78% per annum shall be payable on any unpaid installments of the Settlement Amount (after deducting any uncredited payments that are entitled to be credited against future installments as set forth in this Section 5). Interest shall be paid on each installment at the time the installment payment is made.

5.6.   The Escrow Fund and the Settlement Fund shall be used to pay the expenses and fees authorized under Section 7; Settling Defendants and Releasees shall have no other responsibility or liability for fees and expenses in connection with this settlement. The balance of the Escrow Fund and Settlement Fund shall be distributed in accordance with the distribution plan developed by the Special Master and finally approved by the Court in accordance with Section 7 of this Settlement Agreement.

5.7.   All funds held in the Escrow Fund and Settlement Fund pursuant to this Settlement Agreement shall be deemed to be in custodia legis of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed pursuant to this Settlement Agreement or this Settlement Agreement terminates in accordance with Section 15 hereof. Funds held in the Settlement Fund shall be invested in United States Government obligations with a maturity of 180 days or less and shall collect and reinvest the interest accrued thereon. At such time that the balance of the Settlement Fund shall total less than $100,000, such balance may be held in an interest-bearing bank account insured by the FDIC.

5.8.   If this Settlement Agreement is not approved or is terminated, canceled, or fails to become effective for any reason, the Escrow Fund and the Settlement Fund, together with interest earned but less expenses for fund administration and class notice actually incurred or due and owing and approved by the Court in connection with this Settlement Agreement, shall be refunded to Settling Defendants within ten (10) business days.

## 6.  TAX STATUS OF FUNDS

At Settling Defendants' option, the Escrow Fund and/or the Settlement Fund may be established as, or converted to, Qualified Settlement Funds in accordance with Section 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder. The parties agree to negotiate in good faith and to cooperate in order to obtain an appropriate order, or the approval of the Court, and to fulfill any other legal necessity for this purpose.

## 7.  FUND ADMINISTRATION AND DISTRIBUTION

7.1.   Settling Plaintiffs shall apply to the Court for appointment of a Special Master within thirty (30) days after Preliminary Approval. The Special Master shall develop a proposed plan of allocation and distribution of the Settlement Fund, employing open and equitable procedures to ensure fair consideration of all proposals for allocation and distribution. The proposed allocation and distribution plan must be approved by the Court before the Settlement Fund may be distributed. Settling Plaintiffs shall implement the Court-approved plan under the Court's supervision. Settling Plaintiffs shall provide the Court and Settling Defendants a quarterly report accounting for expenses paid from the Settlement Fund and itemizing the amounts distributed to claimants against the Settlement Fund and other recipients of payments from the Settlement Fund.

7.2.   Any attorney of record in the Filed Actions may apply to the Court for an award of attorneys' fees and expenses from the Escrow Fund or Settlement Fund. However, no attorneys' fees or expenses may be paid from the Escrow Fund or Settlement Fund until the Settlement Date. Settling Defendants and other Releasees shall have no liability for attorneys' fees or expenses beyond the Settlement Amount.

7.3.   Pending issuance of the Final Order and Judgment, and subject to the requirements of the Escrow Agreement, the escrow agent(s) for the Escrow Fund may authorize disbursements of up to $10 million in the aggregate for payment of bona fide costs normally, reasonably, and necessarily incurred for purposes of providing Class Notice or otherwise effectuating this Settlement Agreement, provided, however, no disbursements may be made for purposes of paying Settling Plaintiffs' attorneys' fees or expenses (other than expenses incurred for class notice or fund administration).

7.4.   Additional amounts may be allocated to pay for notice costs with the approval of the Court.

7.5.   Commencing on the Settlement Date, and pursuant to the Court's supervision, Settling Plaintiffs may distribute the Settlement Fund in accordance with the plan of allocation and distribution finally approved by the Court. Subject to Court approval, the reasonable fees and expenses of administering the Settlement Fund may be paid from the

Settlement Fund. Subject to Court approval, unpaid adminis-
trative debts of the Escrow Fund shall be assumed and paid
by the Settlement Fund. Settling Defendants and other
Releasees shall have no liability for such administrative fees
and expenses beyond the Settlement Amount.

7.6.   Each person or entity receiving a distribution from
the Settlement Fund shall be required to submit to Settling
Plaintiffs an executed Proof of Claim in a form to be desig-
nated in the administration and distribution plan. The required
Proof of Claim shall include an acknowledgment of the re-
lease of all Claims. The releases and covenants not to sue
granted in Section 12 are absolute, and shall not be affected
in any way by the failure of any recipient of a payment from
the Settlement Fund to submit the Proof of Claim or by any
deficiencies in any Proof of Claim. On or before the tenth
day of each month, Settling Plaintiffs shall provide Settling
Defendants copies of all Proof of Claim forms filed within
the preceding month.

7.7.   The plan of allocation and distribution shall per-
mit payments to any member of the Settlement Classes, re-
gardless of whether the member received funds in connec-
tion with the ICEP's or the Claims Resolution Tribunal's de-
terminations. Such payments shall not imply reappraisal or
criticism of the findings and determinations of the ICEP, the
ICRF, the Claims Resolution Tribunal, or related bodies or
individuals.

7.8.   Settling Defendants shall have no responsibility
for preparing or implementing the plan for administration and
distribution of the Settlement Fund, and shall have no liabil-
ity to the Settlement Classes or any other person or entity in
connection with the administration, allocation, and distribu-
tion of the Settlement Fund.

# 8. CLASS CERTIFICATION

8.1.   Settling Plaintiffs shall submit to the Court a mo-
tion seeking, pursuant to Fed. R. Civ. P. 23, solely for pur-
poses of settlement, certification of the classes of plaintiffs
that are described in Section 8.2 hereof ("Settlement Classes").
The motion will state that Settling Defendants' consent to
class certification is for settlement purposes only and is con-
ditioned on the Court's entering the Final Order and Judg-
ment and such order becoming fully effective on the Settle-
ment Date. If the Court declines to confirm certification of
the Settlement Classes as defined in Section 8.2, Settling
Defendants may withdraw their consent to class certification
and terminate this Settlement Agreement in accordance with
Section 15. Following issuance of the Class Notice and the
Fairness Hearing, Settling Plaintiffs shall seek an order from
the Court confirming the certification of the Settlement
Classes.

8.2.   The motion for conditional class certification shall
seek certification of the following Settlement Classes:

(a) Deposited Assets Class: The Deposited Assets

Class consists of Victims or Targets of Nazi Persecution and
their heirs, successors, administrators, executors, affiliates,
and assigns who have or at any time have asserted, assert, or
may in the future seek to assert Claims against any Releasee
for relief of any kind whatsoever relating to or arising in any
way from Deposited Assets or any effort to recover Depos-
ited Assets.

(b) Looted Assets Class: The Looted Assets Class
consists of Victims or Targets of Nazi Persecution and their
heirs, successors, administrators, executors, affiliates, and
assigns who have or at any time have asserted, assert, or may
in the future seek to assert Claims against any Releasee for
relief of any kind whatsoever relating to or arising in any way
from Looted Assets or Cloaked Assets or any effort to re-
cover Looted Assets or Cloaked Assets.

(c) Slave Labor Class I: Slave Labor Class I consists
of Victims or Targets of Nazi Persecution who actually or
allegedly performed Slave Labor for companies or entities
that actually or allegedly deposited the revenues or proceeds
of that labor with, or transacted such revenues or proceeds
through, Releasees, and their heirs, executors, administrators,
and assigns, and who have or at any time have asserted, as-
sert, or may in the future seek to assert Claims against any
Releasee for relief of any kind whatsoever relating to or aris-
ing in any way from the deposit of such revenues or proceeds
or Cloaked Assets or any effort to obtain redress in connec-
tion with the revenues or proceeds of Slave Labor or Cloaked
Assets.

(d) Slave Labor Class II: Slave Labor Class II con-
sists of individuals who actually or allegedly performed Slave
Labor at any facility or work site, wherever located, actually
or allegedly owned, controlled, or operated by any corpora-
tion or other business concern headquartered, organized, or
based in Switzerland or any affiliate thereof, and the indi-
viduals' heirs, executors, administrators, and assigns, and who
have or at any time have asserted, assert, or may in the future
seek to assert Claims against any Releasee other than Set-
tling Defendants, the Swiss National Bank, and Other Swiss
Banks for relief of any kind whatsoever relating to or arising
in any way from such Slave Labor or Cloaked Assets or any
effort to obtain redress in connection with Slave Labor or
Cloaked Assets.

(e) Refugee Class: The Refugee Class consists of Vic-
tims or Targets of Nazi Persecution who sought entry into
Switzerland in whole or in part to avoid Nazi persecution and
who actually or allegedly either were denied entry into Swit-
zerland or, after gaining entry, were deported, detained,
abused, or otherwise mistreated, and the individuals' heirs,
executors, administrators, and assigns, and who have or at
any time have asserted, assert, or may in the future seek to
assert Claims against any Releasee for relief of any kind what-
soever relating to or arising in any way from such actual or
alleged denial of entry, deportation, detention, abuse, or other
mistreatment.

## 9. NOTICE TO THE SETTLEMENT CLASSES

9.1.   Settling Plaintiffs shall develop and submit to the Court for Preliminary Approval a plan for providing, in accordance with Fed. R. Civ. P. 23, notice to the Settlement Classes of the proposed class certification and settlement. Before submitting the plan to the Court, Settling Plaintiffs shall provide the plan to Settling Defendants and shall consider including such revisions to the plan that Settling Defendants may recommend. Any disagreements over the form, content, or method of class notification shall be resolved by the Court.

9.2.   Upon Preliminary Approval and as the Court may direct, Settling Plaintiffs or their designee shall cause notice ("Class Notice") of the pendency of the actions consolidated for pre-trial purposes in In re Holocaust Victims Assets, Master Docket CV-96-4849, the settlement embodied herein, the conditional certification of the Settlement Classes, class members' exclusion and objection rights, and the Fairness Hearing to be provided to the members of the Settlement Classes in accordance with the Court-approved notice plan. The Class Notice shall include a reasonably detailed description of the process for developing the allocation and distribution plan under the Special Master's direction.

## 10. SETTLEMENT CLASS MEMBERS' RIGHT OF EXCLUSION

10.1.   Any Settlement Class Member who wishes to be excluded from the settlement must submit a written request for exclusion to class counsel or an approved or appointed designee by the date specified in the Class Notice. The Court may, in its discretion, request such persons to describe the nature and amount of any Claims that the requestor may in the future wish to assert. The class counsel or the approved or appointed designee shall provide copies of any exclusion request to the Court, Settling Plaintiffs, and Settling Defendants within five (5) business days of receiving the request.

10.2.   Any Settlement Class Member who does not submit an exclusion request meeting the requirements set forth in Section 10.1 by the date specified in the Class Notice will be a Settlement Class Member for all purposes under this Settlement Agreement. Any Settlement Class Member who elects to be excluded from the Settlement Class pursuant to Section 10.1 shall not be entitled to relief under or be affected in any way by this Settlement Agreement.

## 11. SETTLING PLAINTIFFS' OBLIGATIONS

11.1.   Settling Plaintiffs endorse this Settlement Agreement as a fair, adequate, and reasonable settlement, and affirm that the Settlement Agreement brings about complete closure and an end to confrontation with respect to the subject matter it covers.

11.2.   Settling Plaintiffs shall not make any public statement or take any action that would violate or be inconsistent with this Settlement Agreement, including seeking or approving economic or other sanctions against, or opposing business transactions involving, any Releasee based on Releasees' alleged conduct covered by the Settlement Agreement.

11.3.   Settling Plaintiffs shall not call for or support suits or other proceedings asserting Claims against any Releasee.

11.4.   Settling Plaintiffs shall instruct their counsel to comply with this Section 11, and any failure by counsel to comply shall be deemed the failure of Settling Plaintiffs to comply.

11.5.   In accordance with and subject to Section 5.4, Settling Defendants may seek a Court order terminating or equitably reducing payment of the Settlement Amount if Settling Plaintiffs commit a material breach of this Settlement Agreement, including, without limitation, a breach of any of the provisions of this Section 11.

11.6.   Settling Defendants shall not make any public statement or take any action that would violate or be inconsistent with this Settlement Agreement. Settling Defendants shall instruct their counsel to comply with this Section 11.6, and any failure by counsel to do so shall be deemed the failure of Settling Defendants to comply.

## 12. RELEASES AND COVENANT NOT TO SUE

12.1.   As of the Settlement Date, Settling Plaintiffs irrevocably and unconditionally release, acquit, and forever discharge Releasees from any and all Claims. This release applies irrespective of whether any Settling Plaintiff receives a distribution from the Settlement Fund. Settling Plaintiffs covenant not to sue Releasees or initiate any form of proceeding seeking redress of any kind for any Claim covered by this Settlement Agreement in any judicial, administrative, or other proceeding anywhere in the world at any time, other than to enforce this Settlement Agreement, and consent to immediate dismissal with prejudice of any proceeding brought in violation of this provision. This release does not apply to Basler Lebens-Versicherungs-Gesellschaft, Zürich Lebensversicherungs-Gesellschaft, or Winterthur Lebensversicherungs Gesellschaft or their subsidiaries in the insurance business, but only to the extent of insurance claims of the type asserted in Cornell, et al. v. Assicurazioni Generali S.p.A., et al., 97 Civ. 2262 (S.D.N.Y.).

12.2.   Settling Plaintiffs, in releasing all Unknown Claims, shall waive any and all provisions, rights, and benefits conferred by Section 1542 of the Civil Code of the State of California, or any similar statute, regulation, rule, or principle of law or equity of any other state or applicable jurisdiction, and do so understanding and acknowledging the significance of such waiver. Section 1542 of the Civil Code of the State of California provides that:

A general release does not extend to claims which the credi-

tor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

12.3.  Settling Plaintiffs also irrevocably and unconditionally release, acquit, and forever discharge the ICEP, the ICRF, the Claims Resolution Tribunal, and the Secretariat of the Claims Resolution Tribunal, as well as their respective officers, directors, employees, agents, attorneys, and contractors (including, without limitation, the individual arbitrators for the Claims Resolution Tribunal and the audit firms retained by the ICEP, including the audit firms' officers, directors, partners, employees, and agents) (collectively, "ICEP Entities"), including without limitation the ICEP Entities listed on Exhibit C, from any and all liability, claims, causes of action, obligations, damages, costs, and expenses arising out of or in any way associated with the ICEP Entities' activities relating to the investigation of Claims. Settling Plaintiffs covenant not to sue the ICEP Entities or initiate any form of proceeding seeking redress of any kind regarding ICEP activities in any judicial, administrative, or other proceeding anywhere in the world at any time, and consent to immediate dismissal with prejudice of any proceeding brought in violation of this provision.

12.4.  At the request of any Releasee, Settling Plaintiffs shall provide a written release to the individual Releasee in the form of Exhibit D hereto. Settling Plaintiffs hereby grant power of attorney to Robert A. Swift to execute the requested release(s) on their behalf and instruct Robert A. Swift to execute each requested release within fifteen (15) business days of receiving the request for the release. Settling Plaintiffs shall appoint a replacement for Robert A. Swift in the event he is unavailable for any reason to carry out the requirements of this Section 12.4, and shall notify Settling Defendants of the replacement within ten (10) business days of appointing the replacement.

12.5.  All Releasees themselves hereby irrevocably and unconditionally release, acquit, and forever discharge all persons from any and all claims relating to public statements or writings made before August 12, 1998, critical of the Releasees' conduct with respect to the Claims and/or issues raised in the Filed Actions.

## 13. DISMISSAL OF RELATED CASES

Within five (5) business days of executing this Settlement Agreement, Settling Plaintiffs shall seek to stay without prejudice **Markovicova, et al. v. Swiss Bank Corporation, et al.,** CV-98-2934 (N.D. Cal.) and No. 996160 (Cal. Super. Ct.) ("Markovicova") and Rosenberg, et al. v. Swiss National Bank, No. CV-98-1647 (D.D.C.) ("Rosenberg") (unless Settling Plaintiffs have previously stayed the cases). If the court denies Settling Plaintiffs' request for a stay, or if the court terminates any stay before the Settlement Date, Settling Plaintiffs shall move to dismiss without prejudice Markovicova and Rosenberg within five days of such denial or termina-

tion, subject to Settling Defendants' agreement (without waiving any defenses then available, including defenses based on the passage of time) to toll any applicable statutes of limitations from the date of dismissal without prejudice to such date as this Settlement Agreement may terminate. Any statutes of limitations tolled under this Section shall resume running on such date as Settling Plaintiffs become entitled to refile Markovicova and Rosenberg under the terms of this Section. Within fifteen (15) business days after the Settlement Date, Settling Plaintiffs shall file notices dismissing Markovicova and Rosenberg with prejudice.

## 14. COURT'S FINAL ORDER AND DISMISSAL

This Settlement Agreement is subject to and conditioned upon (1) the issuance by the Court following the Fairness Hearing of a Final Order and Judgment granting final approval of this Settlement Agreement in accordance with Fed. R. Civ. P. 23 and dismissing with prejudice the cases consolidated for pre-trial purposes under the caption **In re Holocaust Victims Assets, Master Docket CV-96-4849,** as well as any other suits pending before the Court asserting Claims that are released pursuant to Section 12 of this Settlement Agreement, and (2) the Final Order and Judgment becoming fully effective on the Settlement Date. As part of the Final Order and Judgment, the Court shall retain jurisdiction for the purpose of overseeing the administration and distribution of the Escrow Fund and the Settlement Fund and for the purpose of enforcing this Settlement Agreement.

## 15. TERMINATION OF THE AGREEMENT

15.1.  Settling Plaintiffs and Settling Defendants shall separately have the right to terminate this Settlement Agreement by providing written notice of an intent to do so to counsel for the non-terminating party within twenty (20) days of (1) the Court's declining to grant Preliminary Approval in any material respect and/or declining to enter a preliminary order in a form to be mutually agreed upon by the parties; (2) the Court's refusal to approve this Settlement Agreement or any material part of it; (3) the Court's declining to certify the Settlement Classes as defined in this Settlement Agreement; (4) the Court's declining to enter a Final Order and Judgment in a form to be mutually agreed upon by the parties; or (5) any court modifying or reversing in any material respect the Final Order and Judgment as entered by this Court.

15.2.  Prior to entry of the Final Order and Judgment, Settling Defendants shall have the right to terminate this Settlement Agreement if (1) economic sanctions are imposed or threatened against Releasees based on alleged acts or omissions covered by the Settlement Agreement; (2) any Settling Plaintiff named in the Filed Actions disavows this Settlement Agreement or acts in a manner contrary to Section 11 of this Settlement Agreement; (3) any Organizational Endorser

or officer, director, leader, or spokesperson of or for any Organizational Endorser disavows this Settlement Agreement or acts in a manner contrary to the Organizational Endorser's endorsement of this Settlement Agreement; or (4) a sufficient number of exclusion requests are filed in accordance with Section 10.1 of this Settlement Agreement that Settling Defendants' termination rights are triggered pursuant to the Supplemental Agreement.

15.3.  If this Settlement Agreement is terminated for any reason under this Section or otherwise or it fails to become effective or implemented for any reason, the Settlement Agreement will have no force or effect whatsoever and be rendered null and void ab initio and not admissible as evidence for any purpose in any pending or future litigation in any jurisdiction involving any of the parties hereto. In such an instance, the parties will be deemed to have reverted to their respective status as of the date immediately before the execution of this Settlement Agreement except for costs which have been expended in connection with class notice or administration of the Escrow Fund.

# 16. MISCELLANEOUS PROVISIONS

16.1.  Upon the Settlement Date, all prior stipulations and orders entered by the Court shall terminate. Nothing in this Section 16.1 shall be construed to prevent Settling Defendants or Settling Plaintiffs from applying to the Court for relief from any such stipulation or order before issuance of the Final Order and Judgment.

16.2.  This Settlement Agreement, including the Supplemental Agreement, the Escrow Agreement, and all other Exhibits attached hereto and hereby incorporated by reference herein, shall supersede any previous agreements and understandings between the parties with respect to the subject matter of this Settlement Agreement. This Settlement Agreement may not be changed, modified, or amended except in writing signed by all parties, subject to Court approval.

16.3.  This Settlement Agreement shall be construed under and governed by the laws of the State of New York, applied without regard to its laws applicable to choice of law.

16.4.  This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

16.5.  This Settlement Agreement shall be binding upon and inure to the benefit of the parties, the Settlement Classes, and their representatives, heirs, successors, and assigns.

16.6.  Representatives of the Settlement Classes under this Settlement Agreement shall have only that status and rights as conferred under Fed. R. Civ. P. 23.

16.7.  The headings of this Settlement Agreement are included for convenience only and shall not be deemed to constitute part of this Settlement Agreement or to affect its construction. The decimal numbering of provisions herein is intended to designate subsections where applicable.

16.8.  No party to this Settlement Agreement shall be considered to be the drafter of this Settlement Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Settlement Agreement.

16.9.  The waiver by one party of any breach of this Settlement Agreement by any other party shall not be deemed a waiver of any prior or subsequent breach of this Settlement Agreement.

16.10.  All counsel and other persons or entities executing this Settlement Agreement or any related settlement documents warrant and represent that they have the full authority to do so and that they have the authority to take the appropriate action required or permitted to be taken pursuant to the Settlement Agreement in order to effectuate its terms.

16.11.  No portion of the Settlement Fund shall be deemed subject to the escheat or forfeiture laws of any government.

16.12.  Any notice, request, instruction, application for Court approval or application for court orders sought in connection with the Settlement Agreement or other document to be given by any party to the other party shall be in writing and delivered personally or sent by registered or certified mail, postage prepaid, with copies by facsimile to the attention of Settling Defendants' representative, if to Settling Defendants, and to Settling Plaintiffs' representative, if to Settling Plaintiffs, or to other recipients as the Court may specify. As of the date of this Settlement Agreement, the respective representatives are as follows:

## For Settling Defendants

Roger M. Witten, Esq.
WILMER, CUTLER & PICKERING
2445 M Street, N.W.
Washington, D.C. 20037-1420
(202) 663-6000
(202) 663-6363 (fax)

**For Settling Plaintiffs**

Michael D. Hansfeld, Esq.
COHEN, MILSTEIN, HAUSFELD
& TOLL, P.L.L.C.
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005
(202) 408-4600
(202) 408-4699 (fax)

Robert A. Swift, Esq.
KOHN, SWIFT & GRAF, P.C.
1101 Market Street, Suite 2400
Philadelphia, PA 19107
(215) 238-1700
(215) 238-1968 (fax)

Melvyn I. Weiss, Esq.
MILBERG WEISS BERSHAD HYNES
& LERACH LLP
One Pennsylvania Plaza
New York, NY 10119
(212) 594-5300
(212) 868-1229 (fax)

        The above designated representatives may be changed
from time to time by any party upon giving notice to all other
parties in conformance with this Section 16.
        IN WITNESS WHEREOF Settling Plaintiffs and Set-
tling Defendants have executed this Settlement Agreement
as of the date first written above.

**Settling Defendants:**

**CREDIT SUISSE GROUP**

(for itself and on behalf of all other Credit Suisse Group enti-
ties included as Settling Defendants)

By _____
Joseph T. McLaughlin
Managing Director
and General Counsel—Americas

UBS AG
(for itself and on behalf of all other UBS entities included as
Settling Defendants)

By _____
Robert C. Dinerstein
Managing Director
and General Counsel—Americas

**Settling Plaintiffs:**

**PLAINTIFFS' EXECUTIVE COMMITTEE**

By _____
Michael D. Hausfeld
Co-Chairperson
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005
(202) 408-4600

By _____
Robert A. Swift
Co-Chairperson
KOHN, SWIFT & GRAF, P.C.
1101 Market Street, Suite 2400
Philadelphia, PA 19107
(215) 238-1700

By _____
Melvyn I. Weiss
Liaison Counsel
MILBERG WEISS BERSHAD HYNES & LERACH LLP
One Pennsylvania Plaza
New York, .N.Y. 10119
(212) 594-5300

**WORLD JEWISH RESTITUTION ORGANIZATION**

By _____
Israel Singer
Co-Chairman Executive

By _____
Avraham Burg
Co-Chairman Executive